Mr. Roberts, you may proceed. Thank you, Your Honor, and may it please the court. This is Dave Roberts for Appellant Lorenzo Pledger. Because the district court erred in how it disposed of Mr. Pledger's claims, this court should reverse or at least vacate its judgment. Regarding the negligence claim, the district court should not have imported from West Virginia state law the provision requiring a plaintiff to provide an expert certificate simply to clear the pleading stage in this action. And regarding the indifference claim, the court should not have this deported from the controlling summary judgment standard. But even before that, it should have given Mr. Pledger a fair chance to provide further evidence that prison medical staff knew about disregarded serious medical condition until he collapsed the required immediate surgery. I'll take those points in turn. On the negligence claim, the state law provision here at issue speaks only to what a plaintiff must do to clear pleadings stage. It does not address what a plaintiff must do to prevail at trial. That simple reason provides the justification that the here. I'll focus so Mr. Roberts on that that point. Um, it seems to me there's two two ways, I guess to make that argument. One is that you follow the recent, you know, Sixth and Seventh Circuit opinions that kind of do the shady Grove type analysis. Or the other is you say those aren't met, and it's procedural under Erie. Which one do you select? I the threshold point and the one that's dispositive here, Your Honor, I is the conflict issue that's adjudicated under shady Grove, the Sixth and Seventh Circuit applications of which I you've referenced and the reason that there is a conflict here is multiple. I'll focus first if I may on the leading rules, and also those that change the expert disclosures. Counsel, I'm sorry, just even before before you start, I thought the the holding of shady Grove is there doesn't have to be a conflict. Why are you referring to this as a conflict analysis? I thought the whole point of shady Grove was even if the two rules even if a state and a federal rule are not in conflict, you could conform to both of them. If they both sort of govern the same area, then the federal rule displaces the state rule. So your Your Honor is absolutely correct that the threshold question is whether there is a conflict and that's measured by what you see in shady Grove, which is whether the federal rules answer the question in dispute and they can do that either because they directly comply with the state rule or implicitly because they occupy the issue. And the reason that you see a conflict, this test is is a straightforward application under the West Virginia provision. Because here, if you take a look at beating stage, the question is, what must a medical negligence claim to do to clear the hurdles of Rule 12 and its state law analogs to state a claim and thereby avoid this? But but you know, but, but Mr. Roberts, the certificate of merit isn't even filed. I mean, it's served. And and, you know, I mean, maybe maybe you're right. This is a hard area for me. I'll grant just I've struggled with this a lot. And so I'm interested in hearing all sides of it. But it just seems odd to me that you would say the federal rules occupy this space, when the state rule is cause of action specific. I'm not aware of any. Yeah, I used to do, you know, tort law, or, you know, a lot of different jurisdictions, I've never heard of federal rules of civil procedure, dealing with calls of action type details like we have here, you know, maybe the one exception is in nine B, but but in general, that's not done. And I just would never expect and don't see how anyone would expect the federal rules of civil procedure to deal with something that relates so specifically to a state tort cause of action. And that's, that's why shady Grove seems kind of maybe applicable, but but but different. Thank you, Your Honor, let me turn to your first point there, which centered on the fact that certificate is served rather than formally filed. This appears to be the way that the statute keeps the effect of its confidentiality, so that it's not filed. The function here is what is is relevant. And that's what you see by the practical application in shady Grove itself. You see that in Gallivan, Sixth Circuit, and in anti-slap contexts in other circuits. The question is, what does a plaintiff have to do to prevent dismissal? And if you look at how this certificate requirement applies in West Virginia State Court, it's clear that it's a gatekeeping device that is at the pleading state. It is not only does it occur at the outset of litigation or discovery, but it's enforced by the state law analogs to rule 12. There is a procedure to challenge its efficiency. And if the certificate is not sufficient, then under the West Virginia analog rule 12, then a more definite statement can be ordered or the claim can be dismissed. What you have to look at is the practical application again. And you see this perhaps most clearly in the Boston East Circuit. The question is whether there's an additional hurdle that a plaintiff must jump over to get to trial. I'm reading from 783 Federal third, 1334. And here you see that additional hurdle. And it's this procedural gatekeeping requirement. That same language, by the way, or similar language I should say, you see in the majority portion of the shady Grove decision itself, when it states that there is a conflict when state law imposes additional requirements on certain claims. That's that language from shady Grove, Your Honor, I believe speaks to the second part of your question, which is how this is cause of action specific. And admittedly, you see many different birds here in state practice in and how they apply to certain claims. But the entire purpose of the federal rules is to set out a uniform cause of action. It does the federal rules, as Your Honor mentions in rule nine, specify when heightened pleading is required for fraud and similar circumstances that are not an issue here. And here you see this conflict most clearly when you contrast what rule nine addresses with the certificate which demands particularized support and evidentiary support of that at the pleading stage, rather than simply stating factual allegations that make out a claim that's possible on its base that would survive a rule 12B dismissal of the federal court. Can I ask just a question if if we adopt your position that the federal rules displace the state certificate requirement, then that would apply in diversity cases as well as FTCA cases, right? For Shady Grove or Hanna purposes, it doesn't matter? Yes, Your Honor, the rules apply in the diversity context. Okay. And so what do you want us to do with Davison, our somewhat old case, affirming application of the the pre dispute arbitration statute in Maryland? Sure, Your Honor, the court need not grapple with with Davison or or how it would be decided today. There was no conflict analysis, there was no question raised in that case of whether the federal rules did displace the state law requirement. I'd also point out, in Davison, where you're talking about the Maryland pre-suit arbitration setting, you don't have the certificate sort of requirement here where you're demanding expert support at the outset of the case, where you are requiring all of that as a gatekeeping device at the very beginning of the case. So there could be difficult questions on different species of medical malpractice laws. But those are for another day. And Davison, in particular, just doesn't answer the threshold question here, which is whether there's a conflict, and it need not be discussed further by by the court in adopting this position. With the panel's permission, I'd like to turn attention to difference claim, where really, there are two key errors that took place, but they share some crucial threshold points. First, all agree that Mr. Pudger had a serious medical need. The only question, therefore, is the defendant's knowledge. And second, it's clear from this court's decisions, that circumstantial evidence can be enough to survive a summary judgment when it relates to the defendant's knowledge. Counsel, if I could ask you a question before you get into the merits, and I know you want to get there, I'll be real quick. But if we agree with you on your criticisms of the Roseboro order, do we get into that issue? The court need not resolve the deficiency of the Roseboro notice, which relates, as the title indicates, to notice because the court can simply hold and I think the clear issue here is that Mr. Fletcher simply never got a fair chance at discovery, regardless of deficiencies in his notice. And to his credit, Mr. Fletcher did ask for this discovery multiple times, and in multiple ways, and he cited the need to cross examine witnesses. In opposing summary judgment, he dictated the court to the magistrate that discovery had not occurred. And the necessary discovery here was really plain to see. It centered on not only the medical records that were omitted from the summary judgment papers, but that magistrate judge had identified the existence of and the relevance. But it also pertained to some discovery in some form on the defendants themselves to address the knowledge that they had, which is knowledge that this information that by definition was uniquely within the defendant's possession. So the prohibit discovery, but even to provide any sort of reason explanation for that refusal, which which we see nowhere in the record. Turning briefly to the summary, first question report, so reaches that on the court here, the district court error, because a reasonable juror could find that the saw evidence of a mass in his abdomen that medical staff had outdated. And yet they did not follow through on their stated promises that are found again, in the contemporaneous medical records, expedite an ultrasound scan and other referral care recommended two months before, in this instance, Mr. Fletcher clinic, and nearly three months before he collapsed in in his cell block, and had to be taken to outpatient care and where just days later, he received surgery. I would signal to the court just the key applications from this court's precedents that speak most correct. I sent a case is disruptive, instructive, where the court reversed the summary judgment to prison medical doctor who treated a diabetic because a juror find and I'm quoting here, that doctor did not follow through with his plan to monitor and provide insulin. The other precedents that I will refer your honors to our case, you see, the Gordon case, all of these are recounting papers. And together, you see several things that speak loudly with this court's precedents, that where there are five years at all, delayed and substituted with, with meaningless check ins that don't provide adequate care to an inmate. That's not enough. And that that is not based in print of medical providers counsel, just just so I understand. So what do you want us to do on this claim? Do you want us to hold right now? This goes to our jury? Or do you want us to send it back for discovery? I the court has either option obviously available to it. I would submit that the ultimate disposition I between those two doesn't result in a large difference on what needs to happen on revamped because there's been no discovery at all. So regardless of whether the current very limited record would be enough to get Mr. pleasure, pass summary judgment and a trial, he deserves and he is entitled to get a fair shot to develop the very best evidence he can regarding the only issue that that was at issue in summary judgment here. So either way, there's going to be discovery and people could remove for summary judgment after discovery if if that seemed appropriate, right? The government would, or the employees, I should say would have the opportunity to remove if the district court allowed it and if I this court had not passed judgment on whether the current limited record would be enough to clear summary judgment. Do we need to? Does counsel need to be appointed? I mean, if this is going back for discovery, are you is part of what you're asking for? Would counsel be appointed? I'm not asking your honor in this position here to direct the appointment of counsel, I would submit that counsel in a case like this is very important. And part of that is because Mr. pleasure remains incarcerated, he lacks many of the usual tools but even an unincarcerated per se, plaintiff might have to and and so whether that's what this court would would do if it's so inclined, and it would be very helpful or whether the district court decides that itself, counsel would be a very helpful and perhaps necessary addition to properly evaluate Mr. pleasure's claims. All right. Thank you, Mr. Roberts. Good morning, and may it please the court. My name is Max Nogay. I'm an assistant United States Attorney for the Northern District of West Virginia. I represent the federal defendants of Pelley's in this matter. As to the FTCA case, this court should affirm the decision of the district court for two reasons. First, the West Virginia statute that issues West Virginia code section 5576 is not displaced by a federal rule, because its requirements must occur before a complaint is filed, not at the time or after a complaint is filed. Second, the West Virginia statute that issue vests certain substantive rights in the defendant healthcare providers, as this court has recognized the similar Maryland statute does. Every case cited or relied upon by the appellant analyzes a state statute or a rule that imposes requirements at the time a complaint is filed, not before a complaint is filed. And for that reason, this court should not follow the reasoning of those cases. The statute at issue is unique because it does not impose a pleading requirement. It does not affect the contents of the complaint itself. Instead, it imposes a pre-filing requirement, which requires the plaintiff in a to serve two papers on to a potential defendant. That would be a notice of claim, which would provide the area of liability. Yes. Counsel, if I could interrupt you, just for the sake of discussion, assume you know that this doesn't fit neatly into the Gallivan Shady Grove type paradigm. And we're looking at you know, the hard stuff, whether it's eerie or not. And yeah, that you know, what what is basically required by this statute is, you know, information that is not in addition to the ultimate burden of proof that must be shown to prevail on medical malpractice. So it doesn't like, you know, impose an additional heightened burden. It's a, you know, type act. I get the point that it also includes an affidavit that's got substantive information in it. But I'm having real trouble under, you know, Walker and these cases of figuring out if you're in the eerie world, whether it's procedural or substantive. You had you deal with the fact that really doesn't give the cause of action, more life, or I guess it gives it less life, potentially procedurally, but it doesn't really add anything, it just moves it up in time. Well, Judge Quattlebaum, if we're looking at a, just a substantive versus a procedural analysis, I think we need to look beyond simply what is being served on the defendant health care providers. When a when a doctor or a physician's assistant receives notice, when it's served upon them, they have the option to elect mediation. And they have to elect that within 30 days of service of the notice of claim, and a certificate of merit. So certainly that is a substantive right that is being vested in the defendant health care providers. And the as I get to this, the Maryland statute, as Judge Harris alluded to, it is a pre dispute arbitration clause where the parties must engage arbitration, unless they both agree to waive arbitration. And there's an additional substantive aspect, upon receipt of the certificate of merit. Under West Virginia case law, if the defendant believes that there is a defect, or that the certificate is not clear enough, they can then request or demand from the plaintiff to then revise or redraft the certificate to compose a more definitive statement. And there is no controlling authority as the sport is aware on this, on this matter in this circuit. So appellant relies upon multiple cases from the sixth and seventh circuits that address statutes that are totally distinguishable from the West Virginia statute at issue. Gallivan, the United States is a Sixth Circuit decision in 2019. And the Sixth Circuit analyzed, it was styled as an Ohio civil rule 10d2. And it requires plaintiffs to attach an affidavit of merit, which is like the certificate of merit here to a complaint. And the court in Gallivan found that under a Shady Grove analysis, federal rules eight, nine, and 12, displace that requirement because it affected the contents of the complaint itself. And the court there applied a straightforward Shady Grove analysis and made that decision. And the Seventh Circuit in Young the United States, the court analyzed in Illinois statute, which, again, requires plaintiffs to attach a affidavit of merit to the complaint. And the young decision did not go quite as far as Gallivan, it's still held that at the summary judgment stage, the defendants can then invoke that requirement and the case can be disposed of at summary judgment. The appellant also cites to Shields v. United States, which is a 2020 District of Connecticut case and the court there analyzed the Connecticut statute, which again, requires the plaintiffs to attach and a detailed written opinion to the When you sign a complaint that in effect is an explicit good faith certification. And all of those cases, as I've explained, they deal with the actual pleading itself with the complaint, whether it affects the contents of it, or whether it affects the attachments to it. None of those statutes and none of the cases relied upon by the appellant in this matter address what is to occur prior to a complaint being fired. And if we're looking at a Shady Grove analysis, it would be the government's position that this case can be disposed of at the first step. And that is whether, well, I'm sorry that it cannot be disposed of at the first step, because there is not a federal rule that is sufficiently broad to control what occurs prior to a complaint being filed. And if we cannot answer that question, we then move on to whether the rule is substantive or procedural. And it would again be our position that there are certain substantive rights that are being vested in the defendant health care providers that they have the right to engage in mediation, they have the right to object to the certificate of merit and request that it be amended or supplemented, or be drafted more clearly. And the government filed a supplemental authorities letter and reference to four circuit cases, in which the Maryland statute, the arbitration statute was not at the forefront, the those cases, admittedly, were equitable tolling cases. But the court did engage in some sort of analysis into the Maryland statutes, and that case would be rapidly the United States, it's a 2016 or circuit case. And the focus there was on whether or not filing a claim with the state agency in Maryland began a civil action. The court held that it did not. However, the court wrote that the plaintiff must work simultaneously to satisfy state law requirements as well as federal requirements in filing these cases because the FTCA is a waiver of sovereign liable to the same extent and to the same manner as a citizen of that state would be held liable. And the court there, it said that under Maryland law, the plaintiff must submit a medical practice claim to the state agency. And I believe the counselor to the appellant misspoke under the Maryland statute. Prior to a civil action being filed, the plaintiff must also file a expert report with the state agency within 90 days of filing a claim with the agency. And at that point, then the parties can either engage in arbitration, or they can waive arbitration and then proceed to a civil actions. And the government also cited in its supplemental authorities letter, Lucas the United States, which is an unpublished for circuit 2016 opinion. And there the court was dealing with, again, equitable tolling and whether the filing of a claim with the Maryland agency began a civil action. And but it also wrote that a state unquestionably has the prerogative to place whatever requirements it chooses on toward causes of action and Congress intended the FECA plaintiffs to comply with those state requirements as well as the federal requirements. And there is one Northern District of West Virginia District Court case is a 2004 case, Stanley, the United States and the court relying upon Davidson, it simply held that the pre filing certificate of merit statute is substantive. And there it conducted an eerie analysis. And it held that it would be outcome determinative because it would alter the character of the litigation. If the suit was brought in federal court as opposed to in state court. And while this may not be pertinent here that it could also encourage form shopping. Appellant makes the argument that the West Virginia statute is displaced by three federal rules. The first being federal rule of civil procedure number eight, which controls the contents of a complaint. And that rule simply states that plaintiffs must have a short plain jurisdictional statement. And then it's a notice pleading rule. It does not control what must be done prior to a complaint being filed. So that rule is not... Counsel, did you is I'm just trying to track your argument with your brief. Did you make a Shady Grove argument in your brief that there was no displacement under the federal rules here? Did you? Okay. The brief was primarily utilizing an eerie analysis. My argument would be in rebuttal to appellant's argument today. However, eerie is still part of the Shady Grove analysis. And the second rule that the appellant claims is displaces the pre filing requirement would be federal rule of civil procedure number nine, which deals with heightened pleading cases such as fraud or mistake. It's not again, applicable because those control the contents of the complaint. The West Virginia statute does not deal with what is in the complaint. And so, counsel, I have a question. It may be not for you or your colleague. I have a question about the Bivens case. Are you are you is that appropriate for you? Or have y'all divided that separately? Yes, Judge, I can address the Bivens case. So so help me on the issue of both the notice and the discovery issue. You know, the notice here doesn't say anything about filing, you know, responsive affidavits or anything. It's actually, it seems different than most of these I've seen before. And then, you know, respond to your colleague's argument that, you know, maybe not officially or real, you know, real clearly, but there's allusions to discovery that looks like they're saying we need some discovery. Those are the two issues I'd like for you to hear from on the Bivens claim. Well, Judge, I will address the second issue you raised there first, because I think it's dispositive of the entire question. Upon filing the motion to dismiss or any alternative motion for summary judgment, as to the Bivens case, the government attached over 600 pages of the plaintiff's medical records. And those records were made available to the plaintiff at that time. And also sure it is BOP's procedure. Whenever a incarcerated individual wants to review their medical records, in this case, for purposes of litigation, they have that right to review the medical records with a with a caseworker. And the court is continually putting the plaintiff on notice, we'll go back to the certificate of merit issue. The court is going above and beyond to notify the plaintiff what it must do to comply with with its requirements. That's my problem. That's my problem. No, it I mean, we got decided I don't want to make a decision. But as I actually got the Roseboro order, and to be honest with you, I got some from other district courts around to compare them. And this one is, doesn't do a lot that other district court orders do in Roseboro notices. And, and so you may be right, they may have gotten in effect everything they would have gotten. Maybe that's your point that, you know, if you attach everything, I, I'm not sure what will happen at the end of the day, if there'll be anything more or less through discovery. But my concern is, there wasn't a notice to a pro se litigant that they, you know, had to file things like affidavits, responsive day, responsive affidavits or other things. Yeah, like there is in some other notices. And so that's my concern. Not yet. I don't know if it'll make any difference at the end of the day. Judge Gregory, I see that I'm out of time. May I answer the question? Yes, you may. Judge, I would, I would take the position that it would not make any difference. The Roseboro notice, while we may agree that it, it doesn't fully state what a plaintiff in this case must do to survive summary judgment, it does allude to and state the certain rules and the plaintiff had the ability to go to the law library to take a look at the rules of civil procedure and read for himself. However, in these Bivens cases, the there's a disincentive against putting federal employees such as prison officials through grueling discovery and depositions and, potentially putting their personal life liability at risk here. And in this case, the medical records control the entire case. And it would be our position that that that would dispose of plaintiff's Bivens case. Can I, because the question I have, and when you say the medical records, were these his complete medical records? There are no other medical records? The records that were that were attached to the motion were the records that were in his possession of the BOP. And those would be the relevant records between 2014 and 2016 at the time that Mr. Pledger was incarcerated in FCI Gilmer. Okay, so it just sort of seems to me that the thing they don't answer, you know, the fundamental question, I think, under our case law is you have, you know, the government's own doctors prescribing this treatment for the plaintiff, he should get a sonogram, he should get a GI consult, and nothing happens for two or three months as he continues to report with increasingly severe symptoms and pain. And we don't have, there's nothing to explain why not. And so that just seems like it's sort of a central question. And the answer to that question, why did he not get the treatment that the doctors thought he should get, isn't going to be answered by the medical records? Or is it? Is the answer to that question somewhere in the medical records? Well, Judge, I would answer that question in two parts. It's BOP procedure that when a, an inmate needs to be sent outside of prison for a consult, that it has to go through certain approvals. And sometimes that approval process may take in upwards of six months. In this particular case, the appellant underwent a colonoscopy on May 19 of 2015. And he's reporting these stomach pains less than one month later. And he was not being denied medical care. However, that colonoscopy did not reveal any glaring issues or blockages for the, for the prison officials to say, this is a serious issue, we need to send him back out for another colonoscopy. There's continual reference to the fact that there was a recent procedure done, it was a colonoscopy. And the, the appellant, at least on average, at least once a week was physically examined by the health services staff. His stomach was palpated, his vitals were taken, he was physically examined. So we would, I guess, close this argument with the fact that this is a disagreement in what care or treatment was provided to the plaintiff, not that it was a deviation from his constitutional rights and a medical care that he requires. Thank you, Mr. Nogue. Mr. Roberts. I'm sorry. I'm sorry. Ms. Bagliani. Thank you, Your Honor. I'm Christine Bagliani on behalf of St. Joseph's Hospital. If it please the court, I want to make it clear in the beginning that the plaintiff's FTCA claim is not applicable to Mr. Pledger's claims against St. Joseph Hospital, which is a private entity. And Mr. Pledger can't seriously challenge the district court's ruling that a Bivens complaint cannot be maintained against St. Joseph's Hospital. So my concern and my focus really is on the application of the federal rules of civil procedure to a medical malpractice claim against the West Virginia private entity in federal court exercising diversity or supplemental jurisdiction. The West Virginia pre-suit notice requirements set forth in West Virginia Code 5576 clearly are not procedural. They are substantive and jurisdictional. In syllabus 0.2 of state XREL prime care versus Faircloth, a 2019 decision, our Supreme Court determined that these pre-suit notice requirements are jurisdictional. Before that in 2004, Judge Healy in the Northern District of West Virginia analyzed the same pre-suit notice requirements and determined them to be substantive, not just procedural. Counsel, it's Judge Harris. I'm sorry. I will better understand your argument. If you will just situate it for me. Why is the hospital still in this case? What claim is still pending against the hospital? I thought the hospital was dismissed as an inappropriate defendant under Bivens and I don't understand that to be on appeal, but is it? I believe it is on appeal, Your Honor, because in Mr. Pledger's case, there were defendants claiming that the dismissal of the medical malpractice claim was inappropriate because of the alleged conflict between the pre-suit notice requirements and the federal rules of civil. Okay, but just so if we agree with you and with the district court and the magistrate that a hospital is not an appropriate defendant under Bivens, that's it, right? As to the hospital? I think it is, unless, as Mr. Pledger's counsel urges you to find, that there is still some survival of a common law malpractice claim. Okay. All right. Yes. With respect to Judge Keeley's decision in the Stanley case, the Northern and Southern District West Virginia courts followed that reasoning between 2004 and 2019. And then after the prime care decision in 2019 came out of our West Virginia Supreme Court, that has been adopted by the Southern and the Northern District courts in the Carter and Orlando cases. As Mr. Nogue said, the decisions made in Gallivan and Young were based on the assumption and frankly, the agreement by the state courts that those pre-suit requirements were procedural. But we've gone far beyond that in West Virginia. And our pre-suit notice requirements give substantive rights to the healthcare providers who may be defendants, the substantive right to notice and the substantive right to demand pre-suit mediation. And that's different than either of the statutes considered in Gallivan or in Young. The pre-suit notice requirements are just that, they're pre-suit. They don't change anything about the nature of the complaint that must be filed, the allegations that must be included in the complaint. And frankly, the notice of claim and certificate of merit are not even supposed to be filed in court, they're supposed to be confidential. So I think that that makes it clear that they don't change anything about the pleading. Instead, they give the healthcare provider defendants a defense to the complaint under 12b1, which is a lack of subject matter jurisdiction. I think that's also important to point out here with respect to my client in particular, that the district court very carefully pointed out to Mr. Pledger that these certificate of merit requirement was applicable to his medical malpractice claim and gave him additional 60 days to come up with certificate of merit after Mr. Pledger had requested that, but Mr. Pledger did not follow through with it. So the district court, I believe, you know, bent over backwards to give Mr. Pledger both notice of the requirements and then an opportunity to meet the requirements. But he did not, as I said, follow through. And even if Mr. Pledger thought that those pre-suit notice requirements had been satisfied through the administrative claims that preceded his Federal Report Claim Act, my client was not a part of that. So based on all of this, we ask that the court affirm the lower court's ruling that the Bivens action is not applicable to St. Joseph's Hospital, and also to find that the pre-suit notice requirements should apply in federal court because they are jurisdictional and substantive, not procedural. Thank you very much, Ms. Vaglianti. Mr. Roberts, you have some time reserved. Thank you, Your Honor. A few points, and I'd like to begin by pointing out the striking contrast that we see most clearly with the government's position. You see, in the context of the negligence claim, the government attempting to hold Mr. Pledger to these various procedural requirements that apply in state courts in West Virginia. On the other hand, though, when you turn to the indifference claim, you see the government really attempting to justify the court's and its own departure from the process that Mr. Pledger was entitled to before the court reached summary judgment and before it addressed the merits of that action. When you look to the negligence claim in particular... Mr. Counselor, Mr. Roberts, aren't you doing the same thing? I mean, you're saying don't worry about the procedures in the Tort case, but you do worry about them in the Bivens case. I mean, so, I mean, y'all are both kind of, because it behooves you, you know, stress and procedure and one and not the other. Your Honor, respectfully, I would suggest that we are focusing on procedure just as much regarding the negligence claim. And here, the procedures are spelled out in the federal rules of civil procedure. I know that my friends on the other side make a point about the timing of the certificate and that it's served rather than filed. But it is a positive question in the practical application of the conflict test that we see in Katie Crowe, that we see in Abbas, that we see in the Fifth Circuit, is all going toward the same question. What does the claimant need to do to advance to the next stage of litigation? When you're in West Virginia Supreme State Court, you must file or you must serve rather, the certificate before you can advance beyond the pleadings. In federal court, there's no requirement to attach any material to the claim. The client may grant it, but whether it's necessary at all. So the government and St. Joseph's have not escaped the presence of a conflict merely by talking about the mechanism by which the state accomplishes this goal. I briefly to the question of whether the certificate confers a substitute of right on and I would respectfully disagree with my friends, because they refer only to rights to a process, right? In one instance, notes, rights to mediation, but those are rights to process, they are not elements of claims, they are not defenses to actions, they are not in any way, intentionally in the unguided murky waters of as substantive. I would just briefly address, if I may, the question of what happened to be applied by the unguided in theory inquiry. And I will respectfully answer that even under that more challenging test, this is not a substantive requirement, the required certificate requirement does not change whether expert support is needed for plaintiffs to prevail at trial, it only changes the timing. That's a classic procedural question. And it's not substantive. There's because it does not change the need for expert. It's unclear and I will submit speculative say that forms are there for other problems. Even if Finally, if I could just address the bitman's claim, briefly, I would point out that there was not an opportunity that an opportunity for Mr. Fletcher to review all of the records at issue. That's because not all of the records at issue were in DOP's custody. There were records and those piece of law that were not and there's no record. Um, regarding the sufficiency of notice, I think Your Honor is receptive in gleaning the problems with the Roseborough notice, where we're not asked for a roadmap, but we are asking at least that the court fully and accurately state the only two rules at issue because the problem with misstating the switch and omitting some of them, which is the problem with the Roseborough notice here, is that it needs to post a likeness with Fletcher. I see my time has expired. Before you go, I'm sorry. Can you just tell me what is the status of the hospital in this litigation? I don't understand. Sure. So, um, it's it and it generally comports with what I think on the other side, which is that the issue of whether the hospital is a property that is not a question that's been briefed on appeal here. But you do still need to assess how he characterized whatever the claim that was brought, whether or not it fits into Bivens. Here, and this was recited, I believe, on page 18 and five in our brief, where we explained that the district court had not passed judgment on whether Mr. Fletcher's claim is actually some point for medical negligence against the hospital. And I would submit that that decision should be left for any remand that the court may order. Unless there are other questions, I thank the court for its attention today. Thank you, Mr. Robert. I note that you're a court opponent. And I just want to say on behalf of the court, we appreciate you and other lawyers who take cases on assignment. It's very important to appreciate that very much. Also note the able representation of the Attorney General, Mr. Nogan, and the representation of St. George Hospital by Ms. Staglianti. Thank you so much. We can't come down and beat you all, but know that we appreciate you for being here, to help us with these issues. Thank you so much. Thank you. Thank you, judges.
judges: Roger L. Gregory, Pamela A. Harris, A. Marvin Quattlebaum Jr.